# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

**JACQUELINE H. ASHLEY,**

                    **Plaintiff,**                             7:12-cv-1040
                                                                                  (GLS)

                      v.

**COMMISSIONER OF SOCIAL SECURITY,**

                    **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Conboy, McKay Law Firm<br>307 State Street<br>Carthage, NY 13619 | LAWRENCE D. HASSELER, ESQ. |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261 | SERGEI ADEN<br>Special Assistant U.S. Attorney |
| Steven P. Conte<br>Regional Chief Counsel<br>Social Security Administration<br>Office of General Counsel, Region II<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | |

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Jacqueline H. Ashley challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g). (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Ashley's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

## II. Background

On February 8, 2010, Ashley filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since November 27, 2009. (*See* Tr.[1] at 54, 61, 126-39.) After her application was denied, (*see id.* at 72-77), Ashley requested a hearing before an Administrative Law Judge (ALJ), which was held on July 12, 2011, (*see id.* at 30-53, 82-83.) On July 19, 2011, the ALJ issued an unfavorable decision denying the requested benefits. (*See id.* at 15-29.) Thereafter, the Social Security Administration Appeals Council issued a partially favorable decision, which affirmed the ALJ's decision that Ashley was not disabled for the period

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (*See* Dkt. No. 9.)

between November 27, 2009 and July 18, 2011, but concluded that she had become disabled as of July 19, 2011 based on a change in her age category. (*See id.* at 1-10.) The decision of the Appeals Council, which adopts the ALJ's findings for the period before July 19, 2011, constitutes the final decision of the Commissioner. (*See id.* at 1, 5.)

Ashley commenced the present action by filing her Complaint on June 27, 2012 wherein she sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. Nos. 8, 9.) Each party, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 14, 15.)

### III. <u>Contentions</u>

Ashley contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (*See* Dkt. No. 14 at 15-23.) Specifically, Ashley claims that the ALJ erred in: (1) failing to give controlling weight to the opinions of her treating physicians; and (2) assessing her residual functional capacity (RFC). (*See id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (*See*

3

Dkt. No. 15 at 13-22.)

## IV. Facts

The court adopts the parties' undisputed factual recitations. (*See* Dkt. No. 14 at 1-14; Dkt. No. 15 at 2-9.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Treating Physician Rule

Ashley first argues that the ALJ erred in affording "limited weight" to the opinions of treating physicians Gerald Calabrese and Alecia VanWagner. (*See* Dkt. No. 14 at 15-18.) According to Ashley, the ALJ

---

[2] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims. As review under both sections is identical, parallel citations to the Regulations governing SSI are omitted.

"unreasonably relied on opinions of non-treating physicians," namely, consultative examiner Roberto Rivera and medical consultant C. Wakeley. (*Id.* at 18; *see id.* at 16-17.) The Commissioner counters, and the court agrees, that the ALJ appropriately considered the opinions of Ashley's treating physicians, and his conclusion that they were undeserving of controlling weight is supported by substantial evidence. (*See* Dkt. No. 15 at 17-19.)

Controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations

5

omitted).  "Nevertheless, where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision,'" it is not necessary that the ALJ "'have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'"  *Id*. (citation omitted).

Here, the ALJ noted that Dr. Calabrese's treatment notes from November and December 2009 indicated that Ashley could not work.  (*See* Tr. at 24, 258-59.)  The ALJ afforded these opinions "limited weight," because they are on an issue reserved to the Commissioner and not supported by the objective medical evidence of record.  (*Id.* at 24.)  The ALJ also considered Dr. VanWagner's January 2011 assessment of Ashley's functional limitations, noting that she is Ashley's family practice physician.  (*See id.* at 24-25, 339-41.)  Dr. VanWagner opined that, due to a decreased range in motion of her right arm and neck, as well as pain in her back, neck and shoulder, Ashley could lift and carry less than ten pounds occasionally, and, in an eight-hour day, stand/walk for two hours and sit for four hours.  (*See id.* at 339.)  According to Dr. VanWagner, Ashley would need to lie down for the remaining two hours of the workday.  (*See id.*)  Dr. VanWagner also opined that Ashley would miss more than

6

three days of work per month due to her impairments, and her medication would severely limit her effectiveness in the work place due to distraction, inattention, and drowsiness. (*See id.* at 340-41.) The ALJ gave this assessment "limited weight" because it is not well supported by the medical evidence of record or Dr. VanWagner's own treatment notes. (*Id.* at 24.) However, the ALJ gave "great weight" to the assessment of Dr. Rivera, who opined that Ashley suffered mild to moderate limitations to twisting and turning of the neck, mild limitations for walking long distances, lifting with her right shoulder, and carrying, pushing, pulling and overhead reaching with the right arm, and no limitations for sitting or standing. (*Id.* at 24; *see id.* at 288-92.) The ALJ also afforded "great weight" to the opinion of Dr. Wakeley, who reviewed the medical evidence of record and concluded that Ashley could lift up to twenty pounds, occasionally reach overhead with her right arm, and in an eight-hour workday, stand and/or walk for six hours, and sit for six hours. (*Id.* at 24; *see id.* at 309-10.)

In declining to give the opinions of Drs. Calabrese and VanWagner controlling weight, the ALJ explicitly referenced 20 C.F.R. §§ 404.1527 and 416.927, as well as relevant social security rulings. (*See id*. at 23.) The ALJ also undertook a thorough discussion of the medical and testimonial

7

evidence of record which were inconsistent with their opinions.  (*See id*. at 23-27.)  As the ALJ explained, Dr. Calabrese's opinion that Ashley could not work is undeserving of any special weight.  *See* 20 C.F.R. § 404.1527(d)(1), (3).  With respect to Dr. VanWagner's opinion, as it is clear that he properly applied sections 404.1527(c) and 416.927(c), the ALJ did not err in failing to methodically discuss each individual factor.  *See* SSR 06-03p, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case.").

    Moreover, the ALJ's determination to discount the opinions of Ashley's treating physicians, and rely instead on the opinions of Drs. Rivera and Wakeley, is supported by substantial evidence.  Specifically, Dr. VanWagner began treating Ashley in March 2010, at which time a physical examination revealed that she was in no acute distress, but suffered decreased range of motion and tenderness in her neck.  (*See id.* at 298-300.)  She also had decreased range of motion and "+4/5 muscle strength" in her right upper extremity.  (*Id.* at 299.)  However, she had 5/5 muscle strength in her lower extremities, straight leg raising was negative, and her neurological examination was benign.  (*See id.*)  The remainder of Dr. VanWagner's treatment notes reveal only sporadic findings with

8

respect to Ashley's cervical spine, including in May 2010 when she noted that a cervical spine x-ray "showed only mild disc bulging." (*Id.* at 304; *see id.* at 301-06, 343-46, 347-60, 362-67.) Further, Dr. VanWagner's treatment notes were largely devoid of complaints or exam findings with respect to low back pain until January 7, 2011, when Ashley requested Dr. VanWagner complete disability paperwork for her. (*See id.*) At that time, it was only noted that Ashley suffered tenderness "in the lumbar region on the right with muscle spasm into the SI joint," but straight leg raising remained negative. (*Id.* at 352.) Notably, in July 2010 Dr. Van Wagner remarked that, although Ashley requested she write a letter to "Social Security disability" on her behalf, she advised that Ashley continue job training and searching. (*Id.* at 364-65.) In addition to the lack of clinical findings in her own treatment notes, an emergency room examination in November 2009 and Dr. Rivera's May 2010 consultative examination do not support Dr. VanWagner's opinion. (*See id.* at 199-201, 288-92.) Finally, the diagnostic testing contained in the record, including a June 2010 x-ray of Ashley's lumbosacral spine, is inconsistent with her restrictive opinion as well as Dr. Calabrese's opinion that Ashley could not work. (*See id.* at 194, 225, 291, 293, 342, 367.)

## B. RFC Determination

Ashley also contends that the ALJ erred in determining her RFC. (*See* Dkt. No. 14 at 18-23.) In addition to being "at odds with the limitations assessed by . . . Dr. VanWagner," Ashley argues that the ALJ's RFC determination failed to account for all of the symptoms of her degenerative disc disease. (*Id.* at 19-22.) Specifically, Ashley alleges that pain in her neck, back, and hip, as well as tenderness in her hands prevents her from performing the full range of sedentary work. (*See id.*) Further, Ashley contends that the ALJ should have produced the testimony of a vocational expert (VE) to establish that there is other work that she could perform, despite her limitations. (*See id.* at 22-23.) The Commissioner responds that the ALJ's RFC determination is supported by substantial evidence and his reliance on the Medical-Vocational Guidelines to determine that Ashley could perform other work was appropriate. (*See* Dkt. No. 15 at 13-22.) The court agrees with the Commissioner.

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3).

10

An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, as discussed above, the ALJ appropriately relied on the opinions of Drs. Rivera and Wakeley in determining that Ashley can lift and carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours and sit for six hours in an eight-hour workday, occasionally use her right upper extremity for overhead reaching, and should avoid exposure to respiratory irritants. (*See* Tr. at 23-24.) Further, the ALJ properly relied on the opinion of psychiatric consultant R. Petro in making his determination that Ashley can understand, carry out, and remember simple instructions, respond appropriately to supervisors, coworkers, and usual work situations, and deal with changes in a routine work setting. (*See id.* at 23, 25, 328-31); *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."). Indeed, Dr. Petro's opinion was supported by

11

the mental status examinations of record. (*See id.* at 285, 369, 372.)

The ALJ also considered Ashley's complaints of musculoskeletal pain, asthma, and mental health impairments, but determined that she was "less than fully credible" based on the objective medical evidence, opinion evidence, her limited and conservative treatment, and her reported activity level. (*Id.* at 27; *see id.* at 25-26); 20 C.F.R. § 404.1529(c)(3)(i)-(vi). Indeed, Ashley's daily activities, which include caring for two dogs and her ailing father, as well as taking weekly GED classes, support the ALJ's decision. (*See id.* at 160, 285-86, 299, 303, 364, 374, 377.) Notably, in July 2010, when requesting a doctor's note declaring her unable to work, Ashley reported that she was "either over or under qualified" for available positions she found through Vocational and Educational Services for Individuals with Disabilities. (*Id.* at 364); *see* 20 C.F.R. § 404.1566(a), (c) (explaining that a claimant is not disabled if their RFC and vocational abilities make it possible for them to do work which exists in the national economy, regardless of their ability to obtain work).

In sum, the ALJ properly considered all of the relevant medical and other evidence, including Ashley's subjective complaints of pain, and substantial evidence supports his RFC determination. Moreover, as the

12

ALJ determined that Ashley's nonexertional impairments did not "'significantly limit the range of work permitted by her exertional limitations,'" consultation with a VE was not required. *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983)); *see* SSR 83-14, 1983 WL 31245 at *4-5 (1983); SSR 85-15, 1985 WL 56857 at *7-8 (1985); (Tr. at 28.)

C. **Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Ashley's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 16, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court

13